UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy Case 18-80357 |
| Joshua J. Andrea, | ) | |
| Debtor. | ) | |
| | ) | Adversary No. 18-96014 |
| Michael Draka, | ) | |
| Plaintiff, | ) | Chapter 7 |
| v. | ) | Judge Thomas M. Lynch |
| Joshua J. Andrea, | ) | |
| Defendant. | ) | |

## MEMORANDUM DECISION

This matter arises out of Michael Draka's Complaint Objecting to Debtor's Discharge and to Determine Non-Dischargeability of Certain Debt. Despite the title given his pleading, Mr. Draka's Complaint only seeks a determination of non-dischargeability under section 523(a)(6) of the Bankruptcy Code of a judgment debt awarded to him for certain personal injuries arising from a motorcycle crash.[1] The court's memorandum decision issued February 1, 2019, denying Plaintiff Michael Draka's motion for summary judgment ("Mem. Dec.") details the procedural history of this adversary proceeding and will not be repeated here.

---

[1] The court's February 1, 2019 Memorandum Decision notes the Plaintiff seeks adjudication of only a single count for determination of non-dischargeability under 11 U.S.C. § 523. (Mem. Dec. at 2 n.2, Adv. ECF No. 36.)

Page **1 of 14**

The Plaintiff requests a determination that the certified default judgment of $1,000,000 entered against the Debtor by the Twenty-Second Judicial Circuit in McHenry County, Illinois on October 10, 2014, is non-dischargeable as a debt for a willful and malicious injury. The state court entered the default judgment on the Plaintiff's one-count complaint against the Debtor for injuries sustained in a motorcycle collision on August 14, 2014. (*See generally* Ex. C to Debtor's Resp. to Mot. Summ. J., Adv. ECF No. 25.) The state court complaint alleges that Draka suffered injuries to his back and incurred medical expenses as a result of the Debtor's "careless and negligent" operation of his motorcycle. *Id.* As explained in the Mem. Dec., the state court judgment is not preclusive on the willfulness issue because it is a default judgment. (Mem. Dec. at 15–17.) Language in the order about "wilfull [sic] and malicious conduct" was unnecessary to the judgment on a complaint for negligence, the Defendant received no notice that the judgment may have included such a finding and the Plaintiff failed to show that the issues of maliciousness and willfulness were actually litigated. *Id.*

The parties tried this matter before the court on May 13, 2019. The Debtor, the Plaintiff and a third-party eyewitness, Michael Klatka, testified. Together with this testimony, the court has considered the sole exhibit admitted at trial: the judgment order entered by the state court. The court also takes judicial notice of its dockets and particularly of the facts admitted by the parties in the pleadings and in their Local Rule 56.1 submissions for the summary judgment motion. *In re Miceli*, 587 B.R. 492, 495 (Bankr. N.D. Ill. 2018); *see also Lulay Law Offices v. Rafter*, 579 B.R. 827, 829

n.1 (Bankr. N.D. Ill. Sept. 29, 2017) (taking "judicial notice of matters of public record, such as filings in the bankruptcy court, even where not specifically referenced by the parties") (citing *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)).

After weighing the evidence and credibility of witnesses, the court finds that the Plaintiff has not met its burden of proving that the Debtor is liable for a debt for willful and malicious injury. As a result, judgment will be entered in favor of the Debtor.

## JURISDICTION

Discharge is a right that is expressly created by title 11 and would have no existence if not created by the Bankruptcy Code. Thus, proceedings on an objection to a debtor's discharge or to object to the dischargeability of a debt arise in a case under title 11. *Kontrick v. Ryan*, 540 U.S. 443, 447–48 (2004). This court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The determination of the dischargeability of a particular debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I), and an action to determine the scope of a debtor's discharge is a fundamental part of the bankruptcy process. Further, the parties each have acknowledged and consented to this court's authority to make and enter a final determination. As such, this court possesses "constitutional authority to hear and finally determine what claims are non-dischargeable in a bankruptcy case." *Muhummad v. Reed (In re Reed)*, 542 B.R. 808, 815 (Bankr. N.D. Ill. 2015). *See, e.g.,*

*In re Yotis*, 521 B.R. 625, 631 (Bankr. N.D. Ill. 2014) (citing *Stern v. Marshall*, 131 S. Ct. 2594, 2618 (2011)).

## FINDINGS OF FACT[2]

From its review and consideration of the evidence presented at trial and the filings in this Adversary Proceeding, the court finds as follows here and elsewhere in this Memorandum Decision:

1. The Debtor owns an orange Kawasaki Zx10R equipped with a 1000cc engine which he rode at the time of the collision.

2. The Plaintiff Michael Draka rode a 600cc Honda CVR 600 motorcycle at the time of the collision.

3. The Debtor did not have a motorcycle license and his insurance had lapsed at the time of the collision. While never taking an Illinois motorcycle driver education course, the Debtor has driven motorcycles since 2009 and claims to have 50,000 miles experience riding them.

4. At the time of the collision, the Debtor and the Plaintiff had known each other for about two years and had ridden motorcycles together on at least five occasions.

5. At the invitation of the Plaintiff, the Debtor met Mr. Draka on August 14, 2014, at an automobile and motorcycle meet held near Luke's Beef, a restaurant located near Carpentersville, Illinois. They left the event

---

[2] The following sets forth this court's findings of fact as required by FED. R. BANKR. P. 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

on their motorcycles shortly after 9:00 p.m., heading north on Illinois Route 25.

6. Approximately ten to fifteen minutes later the Debtor's motorcycle collided with the Plaintiff's motorcycle on a stretch of Route 25.

7. As they passed Silverstone Drive, Andrea and Draka and a third member of their group, Michael Klatka, were riding in the same lane of the highway, with Draka's motorcycle in the lead and Andrea's at the back.

8. After Andrea accelerated his motorcycle to move up, the forward portion of his motorcycle collided with the rear of Draka's. Both riders then lost control and were thrown from their vehicles.

9. Both Andrea and Draka claim to have sustained injuries as a result of the collision, Draka claims to have injured his back among other things.

10. Mr. Klatka witnessed the collision.

11. On August 10, 2016, Draka commenced a personal injury action against the Debtor by filing a single-count complaint in the Twenty-Second Judicial Circuit (Case No. 16 LA 000280). His complaint alleged that the Debtor's negligence caused the collision. Mr. Draka sought money damages for his medical expenses, future treatment and pain and suffering. His pleading did not expressly allege willful and wanton conduct or action with malice.

12. The Debtor did not respond to the complaint. On October 10, 2017, the state court entered a default judgment for $1,000,000, plus court costs, in favor of the Plaintiff and against the Debtor.

13. The Plaintiff's attorney proposed the 2017 Judgment Order entered by the state court. The Judgment Order states in a hand-written section prepared by counsel:

> "Judgment is hereby entered for Plaintiff Michael Draka and against Joshua Andrea, for his wilfull [sic] and malicious conduct on 8/14/14 that harmed the Π and his property after hearing Π's evidence for bodily damages."

14. The parties admit the Plaintiff did not serve notice on the Debtor that Mr. Draka would assert willful and wanton conduct in the state court case.

15. The state court received no evidence about bodily injury or damages before it entered the proposed Judgment Order.

16. The Debtor commenced his related bankruptcy case by filing a chapter 7 voluntary petition on February 23, 2018.

## DISCUSSION AND CONCLUSIONS OF LAW

Section 523 specifically excepts from discharge certain debts of an individual debtor. Mr. Andrea seeks relief under section 523(a)(6) which excepts any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). A creditor seeking a nondischargeability

determination under § 523(a)(6) must demonstrate by a preponderance of the evidence "(1) an injury caused by the debtor (2) willfully and (3) maliciously." *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013).

For purposes of subsection (a)(6), willfulness entails "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Gerard v. Gerard*, 780 F.3d 806, 811 (7th Cir. 2015) (internal quotation omitted) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis omitted)). This requires "that the debtor actually intended to harm [the plaintiff] and not merely that the debtor acted intentionally and [the plaintiff] was thus harmed." *Colemichael Invs., L.L.C. v. Burke (In re Burke)*, 398 B.R. 608, 625–26 (Bankr. N.D. Ill. 2008). This element is "judged by an objective standard. . . [which] can be found either if the debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury." *Gerard*, 780 F.3d at 811 (internal quotation omitted).

A debt "attributable to negligent or reckless conduct" does not fall within the terms of Section 523(a)(6). *Kawaauhau*, 523 U.S. at 59–60. Maliciousness "requires that the debtor acted in conscious disregard of [his] duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Horsfall*, 738 F.3d at 774 (alteration in original) (internal quotation omitted). But a debt may be non-dischargeable under section 523(a)(6) if the debtor's conduct "was substantially certain to result in injury." *Id.* As such "a debtor who should have known that his or her actions would result in injury would be liable." *In re Reed*, 542 B.R. at 831.

The three witnesses, Debtor Andrea, Plaintiff Draka and Michael Klatka, each testified about the events of August 14, 2014. In many respects, their testimony is consistent. The three knew each other and had ridden together "a few times" before. Andreas and Draka each recalled about five rides with each other over the previous two years. At the Plaintiff's suggestion, the three had met at Luke's Beef, a local restaurant near where a car and motorcycle meet was being held. The Plaintiff and the Debtor both recall walking around the event together. By all accounts there were no issues between them, the mood being described as "amiable." The group left the meet shortly after nine p.m. to return home via Route 25. The Debtor was riding his Kawasaki Zx10R, a vehicle with a rated displacement of about 1000cc, while Mr. Draka rode a Honda CVR 600 with a 600cc engine.

About ten to fifteen minutes after their departure, the Debtor's motorcycle collided with the Plaintiff's. They were driving north in a single lane on a four-lane divided section of Route 25 just beyond Silverstone Drive, a few minutes away from the Illinois Highway 62 intersection. Both the Debtor and the Plaintiff sustained injuries in the crash.

There are minor differences in the three stories, including whether the invitation to meet at the car show was by a phone call or group text, and whether the three left it together or if the Plaintiff and Klatka left shortly before the Debtor. The most significant disagreement concerns the details of the collision and the alignment of the three motorcycles with each other just before the crash. The Debtor testified that he tried to catch up to the Plaintiff from the intersection. According to Andrea's

account, Mr. Draka had "tak[en] off" from the intersection. Andreas claimed that he "started smoothly" and was accelerating his motorcycle when the Plaintiff drifted into the him. Draka was looking back over his shoulder as this happened, according to the Debtor. Mr. Andrea then described how he was thrown from his bike and tumbled down the road. Sustaining a concussion in addition to ligature injuries, Mr. Andrea was hospitalized for five days. Notably, he admits to experiencing memory issues for some time afterward. However, he insists his memory has returned and that he now remembers the incident "as it happened."

Third-party witness Michael Klatka testified that he did not see the Plaintiff veer into the Debtor. Mr. Klatka claimed instead that shortly before the crash Draka rode in front of Klatka while Andrea was coming up behind them in the right lane. The other two bikes were in the left lane. Klatka testified that the Debtor passed him after rapidly accelerating, trying to come between and "split" Klatka and the Plaintiff. During this maneuver, the Debtor's motorcycle struck the Plaintiff's rear tire from behind and Draka flew off his bike.

The Plaintiff testified that he looked in his rearview mirror just before the collision. He saw Klatka's headlight in the left lane and the Debtor's headlight in the right. Draka then testified that as he started to look over his right shoulder he felt the collision and was ejected. Insisting that he was driving straight in the left lane and did not "drift" over, Draka nonetheless admitted to looking over his shoulder just before the crash.

Absent from the testimony of the three witnesses, however, is any suggestion of a motive or impetus for the Debtor to intentionally collide with the Plaintiff, let alone there being evidence of malice on the part of Andreas. The parties were apparently acquaintances who had ridden together in the past. They said little about what occurred at the restaurant or during the drive before the collision. No one indicated there had been an argument or expression of ill-will between the parties. The Debtor instead testified that they talked at the meet and that their time there was "friendly" and without "animosity." Nothing in the testimony of the Plaintiff or Mr. Klatka contradicted this. Nor did any of the witnesses suggest anything occurred during the drive that might have triggered road rage or the like.

Rather than examining the Debtor's motive, the Plaintiff largely focuses on the actual mechanics of the collision: that the Debtor accelerated, "going full throttle,"[3] immediately prior to the crash and that the Debtor's motorcycle had a larger engine than the Plaintiff's and Mr. Klatka's. The Plaintiff also focuses on the Debtor's lack of a motorcycle license and insurance at the time of the collision. But neither point is material to whether the Debtor intended to injure the Plaintiff. The Supreme Court has held that the intent requirement in section 523(a)(6) requires that "the actor intend the *consequences* of an act, not simply the act itself." *Kawaauhau*, 523 U.S. at 62 (internal citation and quotation omitted). *Kawaauhau* involved a claim for medical malpractice. The Court's explanation of its rejection of the broad interpretation of intentionality suggested by the plaintiff in that case is equally valuable here:

---

[3] Apparently not unexpected behavior. On the witness stand, the Mr. Klatka testified to the Debtor rapidly accelerating during a previous ride.

> Every traffic accident stemming from an initial intentional act—for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic—could fit the description. . . . A construction so broad would be incompatible with the well-known guide that exceptions to discharge should be confined to those plainly expressed.

523 U.S. at 62 (internal quotations omitted).

Rather than establish an actual motive to inflict injury, the Plaintiff attempts to establish willfulness via proof of acts "substantially certain to result in injury." *Gerard*, 780 F.3d at 811. He argues the Debtor should have known that accelerating his more powerful motorcycle from behind would result in the collision with the Plaintiff. But it is undisputed that at the time of the collision all three vehicles were travelling at least 45 miles per hour after dark. None of the witnesses testified, for example, that the Debtor appeared to intend to ram his vehicle into the Plaintiff's. Instead, they testified he was trying to either pass the Plaintiff or pass between him and Mr. Klatka.

The Plaintiff fails to show that his action or attempted action was substantially certain to result in injury. Mr. Klatka, who testified that the collision occurred as the Debtor tried to drive between the Plaintiff and Klatka, gave conflicting testimony about how far apart he and the Plaintiff were at the time. On direct examination, he testified that when the Debtor began accelerating "full throttle" there was about 30 to 40 feet between the Debtor and the rear of the Plaintiff's motorcycle. When asked, whether based on his experience as a motorcycle driver, there was "sufficient room

between Mr. Draka and Mr. Andrea for him to go full throttle on a 1000 cc street bike on the night of August 14, 2014," Mr. Draka responded, "I would assume so, yeah."[4]

Even if the court were to accept Mr. Draka's version of the events, the Debtor has shown only negligent or reckless behavior, not a willful and malicious injury. None of the words or actions of the Debtor that evening demonstrate the specific intent to do harm necessary to establish malice. It well may have been dangerous and stupid for the Debtor to attempt to catch up with the two motorcycles as he did, but it has not been shown that his conduct was substantially certain to cause injury. After weighing the testimony and credibility of the witnesses, the court finds that the Debtor may have believed that he was sufficiently skilled and equipped with a suitable vehicle to catch up to the others without causing a crash. While Mr. Draka testified, for example, that the gap between them when the Debtor accelerated was as little as a "couple feet," he also testified that it was considerably larger.[5] Yet, Mr. Klatka's testimony was quite vague as to timing or how that distance varied.[6] It is also important to note that all three motorcycles were in motion at the relevant times, and therefore their precise distances from each other was likely not static.

---

[4] On cross-examination, Klatka testified that shortly before the collision he and the Debtor were both in the right side of the left lane and he was directly behind the Plaintiff, but gave varying accounts of exactly how far behind. First, he testified that he was a couple feet behind, then clarifying, I don't know, like, I don't know how far, 10, 5 feet. 10 feet? Draka further testified that at the same time the Debtor's bike was about the same distance behind Mr. Draka's bike, though in the right lane. He testified that after accelerating, the Debtor passed him on the right side, about 2 feet away, and then moved diagonally across the lanes to come between Draka and the Plaintiff, striking the rear of the Plaintiff's motorcycle in the process.

[5] Mr. Draka testified that the Debtor was as far as 40 feet behind the Plaintiff and that Mr. Draka was equidistant from each.

[6] For example, Mr. Draka at one point testified that the Debtor's motorcycle was behind him in response to a question as to where it was located immediately prior to the collision with the Plaintiff.

Additionally, it was dark outside and therefore was likely more difficult to gauge distances accurately. This court, therefore, finds that the testimony does not establish that the Debtor intended to injure the Plaintiff or knew that injury was substantially certain to result from his actions, and as such the Plaintiff fails to meet his burden of demonstrating willful injury.

The proof of the Debtor's lack of insurance or a special motorcycle license does not alter this result. The Plaintiff has not shown that the Debtor's lack of a license or special training was substantially certain to cause him to injure others by driving a motorcycle. Instead, the Debtor credibly testified without contravention that he had five-years' experience—about 50,000 miles—riding motorcycles before the collision. Further, the Supreme Court has rejected the argument that "as a policy matter, malpractice judgments should be excepted from discharge, at least when the debtor acted recklessly or carried no malpractice insurance." *Kawaauhau*, 523 U.S. at 64. Noting that while Congress "may so decide" in the future, the Court emphasized that courts "must follow the current direction § 523(a)(6) provides." *Id.* The Court also indicated that illegal operation of a motor vehicle does not in itself make injury caused by such operation willful and malicious except in the case of intoxication. Noting that section 523(a)(9) specifically excepts from discharge debts "for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance," the Court refused "to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Id.* (citing

*Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837 (1988)). Thus, even if the Debtor was driving in violation of Illinois law, that fact alone does not transform his negligent or reckless operation of the motorcycle into a willful and malicious act.

## CONCLUSION

The Plaintiff has failed to meet his burden of demonstrating by a preponderance of the evidence that the Debtor is indebted to him for a debt for willful and malicious injury. Accordingly, judgment shall be entered in favor of the Debtor. A separate order shall be entered concurrently giving effect to the determinations reached herein.

DATE: August 6, 2019

ENTER

_____
Thomas M. Lynch
United States Bankruptcy Judge